IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

CHESTER GUNTER,

Plaintiff,

v.

ERIN REYES; DR. ROBERTS; DR. NORTON; DR. MARK PATTON.,

Defendants.

Case No. 2:22-cv-01113-AA

**OPINION AND ORDER**

---

AIKEN, District Judge

Defendants Erin Reyes, Dr. Norton, and Dr. Mark Patton ("State Defendants") move for summary judgement on Plaintiff Chester Gunter's claims. ECF No. 58. For the reasons explained below, State Defendants' motion is GRANTED.

## BACKGROUND

### I. Factual Background

Plaintiff Chester Gunter is an adult-in-custody ("AIC") of the Oregon Department of Corrections ("ODOC"). Am. Comp. ¶ 2; Answer ¶ 3. He entered ODOC custody August 14, 2002. Lentz Decl. ¶ 3 ECF No. 60. From 2003 to 2022, Plaintiff was incarcerated at Two Rivers Correctional Institution ("TRCI") except for August 2022 to November 2022, when he was housed at Snake River Correctional Institution

("SRCI"). *Id.* Since March 2023, Plaintiff has been housed at Oregon State Penitentiary. *Id.*

Around June 2015, Plaintiff had back surgery at Meridian Park Hospital in Tualatin, Oregon. Am. Compl. at III.D. Four months later, Plaintiff had follow-up surgery at Emmanual Hospital in Portland, Oregon. *Id.* In November 2019, Plaintiff was seen at Good Shepherd Hospital in Hermiston, Oregon and he was referred to a neurosurgeon at Kadlec Hospital. *Id.* In June 2020, Plaintiff had an infection in his back and was sent to Good Shepherd Hospital, from which he was sent to Kadlec Hospital. *Id.* In October 2020, the head neurosurgeon at Kadlec Hospital told Plaintiff that his infection was the result of the 2015 surgery, specifically some surgical screws in Plaintiff's back were loose. *Id.* Plaintiff was told that he would need to be treated for the infection for the remainder of his life. *Id.*

Defendant Erin Reyes is the superintendent of TRCI. Am. Compl. at 2; Answer ¶ 4. She is being sued in her individual and official capacities. Am. Compl ¶ 3.

Defendant Dr. Roberts is the Chief Medical Officer for ODOC. Am. Compl. ¶ 4; Answer ¶ 5. Defendant Roberts is not a party to the motion before the Court.

Defendant Dr. Patton was a doctor at TRCI, and his last date of employment with ODOC was June 30, 2020. Lentz Decl. ¶ 10

Defendant Dr. Norton was a doctor at TRCI, and his last date of employment with ODOC was May 31, 2018. Lentz Decl. ¶ 7.

Plaintiff filed a tort claim notice with the Oregon Office of Administrative Services on January 29, 2021, which was received on February 3, 2021.Hall Decl., ¶

3 ECF No 59 Def.; Ex. 101. In the notice, Plaintiff named Drs. Norton and Patton. Def Ex. 101 at 2. Plaintiff also wrote that "the events spoken about here happened on the Oct 6th 2020 when I was able to learn the extent of their negligence[.]" *Id.* at 1

## II. Procedural Background

Plaintiff, proceeding pro se, filed this action on August 1, 2022. ECF No. 2. In his original complaint, Plaintiff named Defendants Reyes and Roberts, as well as John and Jane Doe.

On April 10, 2023, Plaintiff amended his complaint. ECF No. 21. The amended complaint replaced John and Jane Does with Defendants Norton and Patton. Am. Compl. at 3.

## LEGAL STANDARD

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252,

1257 (9th Cir. 2001). The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

## DISCUSSION

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment of the U.S. Constitution made applicable to the states by way of the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 667 (1962).

### I. The Funrue Declaration

As a preliminary matter, the Court addresses the declaration of Meghan Funrue. ECF No. 65-2. State Defendants challenge the admissibility of the declaration, which was included by Plaintiff in his Response to the Motion.

Federal Rule of Evidence 702 "establishes several requirements for admissibility: (1) the evidence has to "assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue"; (2) the witness has to be sufficiently qualified to render the opinion[.]" *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010). Fed. R. Evid. 702.

Expert opinion is also controlled by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Trial judges are charged with ensuring that "any and all . . . [expert] evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "Under Daubert, the trial court must act as a 'gatekeeper' to [evidence] that does not meet

Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Ms. Funrue has been a registered nurse ("R.N") since 2016. She is currently the "Nursing House Supervisor at Providence Newberg[.]" Funrue Decl. ¶ 1. No curriculum vitae was supplied to the court, nor was any educational background for Ms. Funrue. Ms. Funrue does not claim any expertise or experience with correctional care. The Court finds *Trujillo v. County. of Los Angeles*, No. CV145431PSGMRWX, 2019 WL 6622853 (C.D. Cal. Jan. 22, 2019), is instructive.

The plaintiff in *Trujillo* was a pre-trial detainee who sued, among other things, for inadequate medical care while in custody. *Id.* at *1. The plaintiff presented several experts, among whom was Jacqueline Moore, R.N. *Id.* at *4. Ms. Moore was "a registered nurse with a Ph.D. in nursing and an advanced certification in correctional health care from the National Commission on Correctional Health Care" and had "thirty-five years of experience in the nursing field during which she served as an administrator for detention centers and has been involved with developing health care standards in correctional facilities." *Id.*

The court found that Ms. Moore was qualified to testify as the "adequacy of [a nurse practitioner's] care" but not as to the adequacy of a neurologist's care. *Id.* at 5. Further, the Court found the Ms. Moore could not testify as to causation of the plaintiff's injuries, saying, "Moore's background[] give[s] no indication that [she] ha[s] the pertinent medical knowledge to allow [her] to determine whether the symptoms

that Plaintiff complains of are a result of Defendants' allegedly substandard care or rather a natural progression of his spinal cord injury." *Id.* at 5.

Here, although she has no correctional-specific education or experience, Ms. Funrue opines about how the kyte system should work in a prison. Funrue Decl. ¶ 26 (describing how "kites" should be reviewed and tracked, which is "standard practice in ordinary medical facilities.") Ms. Funrue also opines on causation, treatment, and diagnoses, none of which are within her remit. For example, she states, "Dr. Norton's notes are medically inconsistent and do not represent a legitimate attempt at medical treatment and care in many ways." Funrue Decl. ¶ 32. Also, she states, "Dr. Norton's actions and omissions fell substantially below the applicable standard of care." Funrue Decl. ¶ 14.

Furthermore, Ms. Funrue's declaration is unhelpful to the Court. For example, "[W]ere blood pressure parameters appropriate for a patient with [abdominal aortic aneurysm] ordered by Dr. Norton, and were those parameters consistently implemented and maintained by clinical staff? The record is not clear." Funrue Decl. ¶ 21. Or, "[d]ermatology consult was ordered. It is unclear from the record whether the consultation was completed. Impact: Lack of confirmation of completion raises concern that necessary dermatologic evaluation may still not have occurred, continuing risk of delayed or inadequate care." *Id.* ¶ 39. Such opinions, in addition to being beyond Ms. Funrue's expertise, do not offer any meaningful analysis.

Finally, the dispositive issues raised in the Motion are (1) supervisory liability as to Defendant Reyes; and (2) the statute of limitations as to Defendants Patton and

Norton. While Ms. Funrue does opine on proper training and supervision in a correctional environment, she has no experience or qualification for the specialized correctional environment.

Ms. Funrue is unqualified on the topics she addresses, does not address her methodology or provide any sources, and her testimony is unhelpful to the Court. Therefore, the Court rejects Ms. Funrue as an expert and will not consider her declaration.

## II. Eighth Amendment

### A. Defendant Reyes

"Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a § 1983 action." *Lemire v. California Dept. of Corrections and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979)). "A prison official in a supervisory position may be held liable under § 1983, however, if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Id.* at 1074-75 (internal citations and quotation omitted). "This causal connection can include: 1) the supervisors' own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) their conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1075 (internal quotations and citations omitted, alterations normalized).

Defendant Reyes is mentioned in the Amended Complaint twice: first, in the caption, and second, in the list of parties. Am. Compl. at 1-2. The same is true of the original complaint. Compl. at 1-2. In the list of parties, Defendant Reyes is described as "Superintendent, TRCI is custodian of plaintiff at TRCI. She is responsible for the safety of plaintiff. She is being sued in her official and individual capacity. Defendant violated a clearly established constitutional right under the 8th amendment of the U.S. Constitution and therefor is not subject to immunity." Am. Compl at 2.

In response to this motion, Plaintiff argues that the claim against Defendant Reyes is for her failure to train the other defendants. Def. Resp. at 7. Nowhere in the pleadings does Plaintiff point to any action or omission of any sort by Defendant Reyes. Even if such a thing was pleaded, the subordinates she allegedly failed to train were physicians, not correctional officers. The topic on which she allegedly failed to train must have been medical, as that is the source of Plaintiff's claims. Regardless, Plaintiff has not gone beyond the pleadings in regard to Defendant Reyes. Summary judgment requires facts, and Plaintiff has failed to carry that burden.

Defendant Reyes is not alleged to have been directly involved in a constitutional violation. Nor are allegations raised for the first time in response to a motion for summary judgment—unsupported by facts—enough to show a causal connection between her conduct and any constitutional violation. Summary judgement is granted in favor of Defendant Reyes.

**B. Defendants Patton and Norton**

Defendants Patton and Norton argue that the claims against them are untimely. Claims under § 1983 do not have a federal statute of limitations; such claims are subject to the statute of limitations of the forum state. *Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003). In Oregon, such a claim must be brought within two years. ORS 30.275(9).

The parties agree that the latest date Plaintiff could have discovered his injury was October 6, 2020, the date mentioned in Plaintiff's tort notice. The action was filed on August 1, 2022, which is less than two years later. But Defendants Patton and Norton were not named until the Amended Complaint, filed on April 10, 2023. This raises the question of whether the naming of Defendants Patton and Norton relates back to the original Complaint. If it does, then the claim is timely. If not, the claim is barred.

Relation back is governed under Federal Rule of Civil Procedure 15(c). To relate back, the previously unnamed party must have "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii).

Here, Patton left ODOC employment in 2018, and Norton left ODOC employment on June 30, 2020, two years or more before Plaintiff filing his original Complaint. There is no evidence that Patton or Norton knew about this case.

More importantly, Plaintiff named Patton and Norton in his Oregon Tort Notice, so there can be no dispute about a mistake of identity. Plaintiff knew the identities of Drs. Patton and Norton in January of 2021 and chose not to name them as Defendants in his Complaint filed October of 2022. The Ninth Circuit held that when when "[t]here was no mistake of identity, but rather a conscious choice of whom to sue[,]" there will be no relation back. *Louisiana-P. Corp. v. ASARCO, Inc.,* 5 F.3d 431, 434 (9th Cir. 1993); *see also Ramos-Santoya v. Ins. Co. of State of Pennsylvania,* 379 Fed. Appx. 596, 597 (9th Cir. 2010) (unpublished) ("It is undisputed that [plaintiff] knew of the identity of the insurer before suit was filed, but for whatever reason, did not name it as a defendant. That was a mistake all right, but not one of identity.")

Because Plaintiff knew of the identities of Patton and Norton before filing suit, his failure to name them was not a "mistake," and the claims against Drs. Norton and Patton are time-barred unless some other doctrine applies to extend the statute of limitations.

**C. Continuing Tort**

Plaintiff argues that the continuing tort doctrine should apply. Pl. Resp. at 15. In essence, the doctrine is that "[w]hen a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002).

However, even if the Court were to accept that the doctrine applies to Plaintiff's claim, it would not save the claims against Norton and Patton.

The claims against Patton and Norton are for their allegedly wrongful conduct in regard to Plaintiff's medical care, not the conduct of any other party. The question is: when did each doctor's conduct end? The answer is clear: when they each left their employment at ODOC. They each left employment at ODOC before Plaintiff's discovery of his claim. Therefore, even under generous assumptions, the applicable date for statute of limitations purposes for both doctors is still October 6, 2020, and the claims are time-barred.

### D. Equitable Estoppel and Tolling

In a § 1983 action, a federal court "borrow[s] the state's tolling rules" alongside the state's statute of limitations. *Soto v. Sweetman*, 882 F.3d 865, 870-72 (9th Cir. 2018).[1] Oregon applies equitable estoppel if five elements are met:

> (1) There must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Donohoe v. Mid-Valley Glass Co.*, 84 Or. App. 584, 587 (1987) (citing *Bennett v. City of Salem*, et al., 192 or 531, 541 (1951)).

---

[1] Plaintiff did not raise tolling as applied to the Prison Litigation Reform Act. *See Brown v. Valoff*, 422 F.3d 926, 942 (9th Cir. 2005) ("[W]e agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.") Nor are there any facts in the record regarding the dates of Plaintiff's grievances upon which the Court could rely. The burden of showing that tolling applies is on Plaintiff. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To receive equitable tolling, a petitioner bears the burden of showing" the required elements). Here, Plaintiff made no showing at all regarding the timing of grievances.

Also, "to invoke the doctrine of estoppel, the defendant . . . Must have done something that amounted to an affirmative inducement that would cause [the] plaintiff to delay bringing [the plaintiff's] action." *Lyden v. Goldberg*, 260 Or. 301, 304 (1971).

Here, Plaintiff discovered his claim on October 6, 2020, and filed his suit August 10, 2022. At no time since Plaintiff discovered his claim were either Dr. Norton or Dr. Patton providing care to Plaintiff—both had left ODOC before Plaintiff's discovery of his claim. There is no evidence that either had any further contact with Plaintiff, let alone that they induced him to delay his claim

Because neither the continuing tort doctrine nor equitable tolling can extend the running of the applicable statute of limitations, summary judgment must be granted in favor of Dr. Norton and Dr. Patton.

## III. Fourteenth Amendment

The parties both reference—and briefly dispute the merits of—a Fourteenth Amendment claim. *See* Def. Mot. at 9; Pl. Resp. at 3; Def. Reply at 15. The Court is at a loss to find such a claim in the Amended Complaint or the original Complaint, and neither party cites to the Amended Complaint in their discussion of this "claim."

The Amended Complaint, which is in general a fillable form, specifically asks "What constitutional or statutory rights do you claim were/ are being violated by state or local officials." Am. Compl at 4. Plaintiff wrote, "Deliberate Indifference and intentional, willful and wanton actions causing suffering Eighth Amendment's Cruel and Unusual Punishment Clause[.]" *Id.* The Amended Complaint does not reference

the Fourteenth Amendment, nor does it say classic Fourteenth Amendment watchwords like "due process" or "equal protection."

Regardless, Defendants are correct that the Fourteenth Amendment applies to pretrial detainees' medical care, but not to the medical care of convicted prisoners, which is analyzed under the Eighth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (2018). Here, Plaintiff's claim is based on medical care during his incarceration. The Eighth Amendment applies, not the Fourteenth Amendment.

**CONCLUSION**

Defendants' Motion for Summary Judgment, ECF No. 58, is GRANTED. Defendants Reyes, Norton, and Patton are dismissed.

It is so ORDERED and DATED this 19th day of August 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge